■ MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Appellant, v CARL H. NEUMAN, Doing Business as LYDIA E. HALL HOSPITAL, Respondent. MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Appellant, v CARL H. NEUMAN, Doing Business as SYOSSET FACILITIES AND SYOSSET HOSPITAL, Respondent.—Order of the Supreme Court, New York County, entered on January 17, 1978, which denied plaintiff's motion for summary judgment against defendant doing business as Lydia E. Hall Hospital, unanimously reversed, on the law, and plaintiff's motion for summary judgment is granted on the issue of liability, the affirmative defenses are stricken, the counterclaims are dismissed, and the matter is remanded for immediate trial solely on the issue of damages, without costs or disbursements. Order of the Supreme Court, New York County, entered January 17, 1978, which denied plaintiff's motion for summary judgment against defendant doing business as Syosset Facilities and Syosset Hospital, unanimously reversed, on the law, and plaintiff's motion for summary judgment is granted on the issue of liability,

the affirmative defenses are stricken, the counterclaims are dismissed, and the matter is remanded for immediate trial solely on the issue of damages, without costs or disbursements. The record in each of the above matters established that defendant upon application by Dr. Neuman obtained malpractice coverage from plaintiff for the period January 14, 1976 to October 5, 1976. Although an effort was made by defendant to limit the premium to be paid to $165,000 it was clear that defendant was advised by plaintiff that the amount of premium to be charged depended upon information defendant was to supply and the application thereto of rates established by the Superintendent of Insurance. Inasmuch as defendant applied for insurance coverage in each case and plaintiff provided the requested coverage, defendant should pay the premium for such coverage and the stabilization reserve fund charge based on such premium. The amount of premium charged was a mathematical computation arrived at on the basis of the information supplied by defendant to which the rates established by the Superintendent of Insurance were applied. So, too, the amount of stabilization reserve fund charge was a mathematical computation, based on the premium charged. Plaintiff's rates were established by the Superintendent of Insurance (Insurance Law, §§ 684, 184) and are a matter of public record *(Medical Malpractice Ins. Assn. v Terrace Hgts. Hosp.,* NYLJ, April 18, 1978, p 6, col 2; Insurance Law, § 184). No valid stay has been issued with respect to the superintendent's determination of said rates. The Insurance Law prohibits any deviation from those rates and requires that premiums be paid in accordance with such rates *(American Motorists Ins. Co. v New York Seven-Up Bottling Co.,* 18 AD2d 36, 38; Insurance Law, § 185) and a like rule applies to stabilization reserve fund charges. Defendant cannot avoid his premium and stabilization reserve fund obligations on the speculative proposition that the rates may be reduced as a result of administrative proceedings by the Superintendent of Insurance in the future. Defendant's remedy in such event is to obtain a refund, with interest, of any overcharge paid to plaintiff (see *Commissioners of State Ins. Fund v Sealand Mar. & Maintenance Corp.,* 13 Misc 2d 745, 756; see, also, Insurance Law, § 187, subd 3). Concur—Kupferman, J. P., Birns, Evans, Fein and Sandler, JJ.