■ MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Respondent, v BROOKLYN HOSPITAL, Appellant. MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Respondent, v MISERICORDIA HOSPITAL MEDICAL CENTER, Appellant.— Order, Supreme Court, New York County, entered November 24, 1978, granting plaintiff's motion for summary judgment against the Brooklyn Hospital on the issue of liability, directing an assessment of damages, dismissing said defendant's counterclaims and striking its affirmative defenses, unanimously affirmed, without costs. Order, Supreme Court, New York County, entered September 13, 1978, granting plaintiff's motion for partial summary judgment against Misericordia Hospital Medical Center on the issue of liability and directing an assessment of damages to determine the unpaid portion of the premium and stabilization reserve fund charge for the period from July 1, 1975 through June 30, 1976, unanimously affirmed, without costs. The actions were brought by plaintiff to recover premiums due and owing for medical malpractice insurance furnished to each hospital. Contrary to each appellant's contention, *Medical Malpractice Ins. Assn. v Neuman* (64 AD2d 559, app dsmd 45 NY2d 838) is dispositive of the liability issues in each case. Each hospital procured medical malpractice coverage from plaintiff, effective July 1, 1975. Each was fully aware that the provisional premium and stabilization fund charge for such coverage was subject to adjustment when final rates were established by the Superintendent of Insurance. As we observed in *Neuman (supra,* p 560): "Inasmuch as defendant applied for insurance coverage in each case and plaintiff provided the requested coverage, defendant should pay the premium for such coverage and the stabilization reserve fund charge based on such premium." Plaintiff provided coverage for defendant the Brooklyn Hospital until May 14, 1976, when it issued a notice of cancellation effective May 28, 1976, for nonpayment of premium. Misericordia Hospital continued its coverage for a full year, requesting plaintiff by letter dated August 27, 1976, to discontinue its coverage effective July 1, 1976. Each hospital, having been afforded malpractice coverage for a certain period of time, is thereby obligated for the premium in accordance with the final rates as approved by the Superintendent of Insurance. The Brooklyn Hospital attempts to distinguish our disposition in *Neuman* upon the ground that in *Neuman* the hospital sought only to reform the policy, whereas here the Brooklyn Hospital seeks to rescind the policy. However, as Special Term properly held, the factual basis on which reformation was sought in *Neuman* are substantially the same as those upon which the demand for rescission is here premised. The rationale of *Neuman* is controlling. The record does not raise material issues of fact supporting the claim of the Brooklyn Hospital that it is entitled to rescission *ab initio* upon the grounds of misrepresentation, unilateral mistake, illegality or violation of the terms of the policy. With respect to the alleged misrepresentation, it is undisputed that the hospital's duly authorized broker requested that plaintiff issue a malpractice policy to the Brooklyn Hospital. As required by law plaintiff extended coverage by its letter of October 24, 1975 as follows: "Malpractice Coverage Effective Date 7/1/75 Provisional Premium Charge: $125,828 Provisional Stabilization Fund Charge: $25,165.50 Date Due: November 17, 1975 The MMIA has been providing Medical Malpractice coverage for your hospital since the above effective date. Due to the short amount of time between the establishment of the MMIA and the date coverage was first afforded, many details as to your final premium have not yet been fully settled. However, to meet our

requirements as insurer, it is necessary to collect *a provisional premium* and *Stabilization Fund charge* for the Medical Malpractice portion of your coverage. Billing for any additional coverages you may have requested as well as final billing for all coverages and stabilization charges will follow at a later date. The provisional premium charge is based on the number of beds listed by your institution in the 1975 American Hospital Association Annual Guide Issue and is equal to six months premium at current provisional rates. You should be aware that requests for new rates are presently awaiting approval. If approved, the additional premium will be billed. Please make this check for the provisional *premium payable to MMIA—* Hospitals, 110 William Street, New York, New York. The interim Stabilization Fund charge is based on the prescribed 20 percent applied to the provisional premium developed for a six month period. As the Stabilization Fund charge is based on the final premium charge, it is also subject to change upon final determination of your premium. Please make this check payable to MMIA Stabilization Fund. Your checks should be sent to MMIA in the enclosed envelope. Failure to remit the full amounts as shown above, on or before the due date, will result in cancellation of coverage for nonpayment." That letter plainly stated that the premium was "provisional" and subject to revision if new rates were approved by the Superintendent of Insurance. The Brooklyn Hospital's current attempt to distort the clear import of that letter provides no basis for rescission on the ground of misrepresentation. The Brooklyn Hospital did not request that its policy be terminated when it received that letter. It procured coverage, allowed it to continue and accepted its benefits until the plaintiff terminated the policy for nonpayment of premiums. As held in *Neuman,* defendant is obligated to pay the premiums for the policy which it ordered. As stated in *Neuman* there are no issues of liability requiring a trial on the allegation that the premiums violated the terms of the policy or that plaintiff has not charged premiums in accordance with its filed rates. The sole issue is one of damages. With respect to the assertion that plaintiff's rates are illegal or do not comply with the requirements of the Insurance Law, there is now pending a hearing before the Superintendent of Insurance on those issues directed in a CPLR article 78 proceeding instituted by the Brooklyn Hospital and others *(Matter of Brooklyn Hosp. v Lennon,* 62 AD2d 1185). As indicated in *Neuman,* if the rates are reduced as a result of that proceeding, defendant's remedy is to obtain a refund with interest on any overcharge paid to plaintiff. Plaintiff's rate structure has been approved by the superintendent and is a matter of public record. As held in *Neuman,* appellant cannot in this type of action challenge the rates and premiums approved by the Insurance Department, particularly in the face of the pending proceeding directed in *Lennon.* The superintendent's rate determinations are to be enforced by the courts in the absence of a valid stay, neither sought nor warranted. (Insurance Law, § 34; *Medical Malpractice Ins. Assn. v Methodist Hosp. of Brooklyn,* 64 AD2d 558; *Matter of Brooklyn Hosp. v Lennon,* 66 AD2d 847.) It would be anomalous to permit the Brooklyn Hospital or any other hospital to raise a claim of rescission *ab initio* on whatever ground after the policy has been terminated for nonpayment of premiums or after coverage has been discontinued at its request. The statutory scheme here involved precludes the plaintiff from rescission *ab initio* (Insurance Law, §§ 684, 153-a; see *Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359; *Teeter v Allstate Ins. Co.,* 9 AD2d 176, affd 9 NY2d 655). To permit *ab initio* rescission after the defendant has had the benefit of the coverage would be destructive of the whole basis and purpose of insurance. It would permit an

insured with little or no losses or loss experience to seek rescission after the fact, shifting the entire burden on to those with heavy loses and loss experience. The defenses raised by Misericordia Hospital are substantially the same as those in *Neuman* and require a similar determination precluding the hospital from reforming the policy. Whether plaintiff's insurance rates or premiums are substantially more than the rates or premiums previously charged by Argonaut Insurance Company, is irrelevant. The rates here charged were established by the Superintendent of Insurance (Insurance Law, §§ 684, 184) and the premiums determined on the basis of information furnished by each hospital. Each hospital requested the coverage and it was granted. Plainly, plaintiff is entitled to recover the appropriate premiums. If there are questions of computation and application of rates, they are available on the assessment ordered by Special Term. Such matters do not raise triable issues of liability. Each defendant is responsible for the premiums and stabilization fund charges representing the period during which coverage was furnished by plaintiff. Concur—Birns, J. P., Fein, Lane and Markewich, JJ.