■ JOHN J. INGRASSIA, Respondent, v MEDICAL MALPRACTICE INSURANCE ASSOCIATION, Appellant.—In an action for a judgment declaring, *inter alia,* that the defendant has an obligation to defend and indemnify the plaintiff with respect to an action against him by Helen Brill, as administratrix of the goods, chattels and credits of Robert Brill, deceased, the defendant appeals, as limited by its brief, from stated portions of an order and judgment (one paper) of the Supreme Court, Nassau County (Christ, J.), entered March 28, 1990, which, *inter alia,* denied its cross motion for summary judgment and declared that the insurance policies in question were "in full force and effect, thereby invoking the duty of defendant herein to defend".

Ordered that the order and judgment is affirmed insofar as appealed from, with costs.

In January 1981, the plaintiff, Dr. Ingrassia (hereinafter the doctor), applied to the defendant Medical Malpractice Insurance Association (hereinafter MMIA), for professional liability insurance coverage. Through an error on the part of MMIA, it did not issue a policy until June 1982. At that time, MMIA issued two policies, effective, respectively, from February 9, 1981 to February 9, 1982 (the 1981 policy), and February 9, 1982 to February 9, 1983 (the 1982 policy). In October 1982, the doctor wrote to MMIA and requested that his 1981 policy be canceled, and that the down payment for that policy be applied to his 1982 policy. MMIA agreed to cancel the doctor's 1981 policy retroactively. The estate of Robert Brill subsequently sued the doctor for malpractice, allegedly committed during the time span covered in the 1981 policy.

The question now before us is whether the doctor's retroactive rescission of his 1981 policy, done with MMIA's express consent, precludes coverage for the malpractice claim brought after the rescission, but relating to a period of time during which the policy was in effect.

On appeal, MMIA claims that the policy was mutually rescinded or canceled *ab initio*, and that liability coverage was therefore not in effect during the period of the alleged malpractice. The doctor argues that where the rights of third parties are involved, rescission or cancellation *ab initio* could not occur where a policy was in fact issued and never rescinded or canceled in accordance with the extensive statutory scheme covering medical malpractice liability insurance.

The Supreme Court determined, among other things, that MMIA must defend the doctor on the Brill claim, and left, for future resolution, MMIA's counterclaim against the doctor for indemnification and for unpaid premiums.

Courts have disfavored rescission of insurance policies *ab initio* upon a recognition that there is a public interest at stake that exceeds the interests of the parties to the contract *(see, Aetna Cas. & Sur. Co. v O'Connor,* 8 NY2d 359; *Medical Malpractice Ins. Assn. v Brooklyn Hosp.,* 70 AD2d 552; *see also, Rushing v Commercial Cas. Ins. Co.,* 251 NY 302, 305; 17 Couch, Insurance § 67:230 [2d ed]; 69 NY Jur 2d, Insurance, § 830).

Moreover, the rescission *ab initio,* under the circumstances of this case, is clearly destructive of the purpose of the insurance scheme established by the Legislature *(see, Medical Malpractice Ins. Assn. v Brooklyn Hosp., supra,* at 553; *see also, Aetna Cas. & Sur. Co. v O'Connor, supra).*

Accordingly, we conclude that MMIA is obligated to defend the doctor. The question of whether any malpractice which may be proved in that action falls within any policy exclusion must await the outcome of the medical malpractice action. Based on the foregoing, we affirm the judgment and order insofar as appealed from. Kooper, J. P., Harwood, Rosenblatt and Miller, JJ., concur.