OPINION OF THE COURT
Herman Cahn, J.
Motion sequence numbers 002 and 003 are consolidated for disposition and are disposed of in accordance with this decision.
Defendants move to dismiss the complaint pursuant to CPLR 3211 (a) (7) and 3016 (b). Plaintiffs seek class certification.
Plaintiffs allege that defendants defrauded policyholders by filing false and inaccurate financial reports with the New York State Department of Insurance (NYSID) to obtain excessive and unwarranted rate increases.
At issue on these motions is whether plaintiffs’ claims are barred by the "filed rate” doctrine, whether their proposed claim under Insurance Law § 4226 survives notwithstanding *353 that doctrine and whether that proposed claim states a cause of action.
Plaintiffs Alfred S. Minihane, Ginsberg & Broome, P. C., Jeffrey Rubin and Richard S. Heller have been subscribers and purchasers of individual or small group health insurance policies from Empire Blue Cross & Blue Shield (Empire) since January 1, 1990 and have had to pay rate increases at times from that date through June 17, 1993. They seek to bring this action on behalf of similarly situated Empire policyholders.
Empire is a not-for-profit corporation that provides health insurance to over 8.2 million customers. Defendant Jerry Weissman was the Chief Financial Officer and Corporate Vice-President of Empire until his employment was terminated on July 14, 1993. Defendant Albert A. Cardone was the Chief Executive Officer and Chairman of Empire for six years until he resigned in May 1993.
Empire is subject to regulation by the State of New York. It is required to file all insurance rates, contracts, applications, riders and endorsements with the NYSID for approval by the Superintendent of Insurance (the Superintendent). (Insurance Law § 4308 [a], [b].) The Superintendent may reject excessive, inadequate or unfairly discriminatory rates. (Insurance Law § 4308 [b].) Empire May only charge an approved rate. (Insurance Law § 4308 [b].)
From 1990 through 1993, Empire applied for and was granted rate increases by the Superintendent in the amounts of 13.74% in 1990, 18.9% in 1991, 14.2% in 1992 and 25.5% in 1993. With each application, Empire supplied documents and data. Public hearings were conducted by the Superintendent, and the NYSID issued opinions and decisions approving and/ or modifying the rate increase requests.
Plaintiffs claim that Empire was maintaining two sets of financial books and documents — one which it showed NYSID in its various rate applications and one which was used internally. Plaintiffs allege that the books shown to NYSID contained erroneous financial information and reports to induce it to grant excessive and unwarranted rate increases. The consolidated amended class action complaint alleges, inter alia, that defendants made the following misrepresentations: (1) overstating Empire’s losses on high risk "community-rated” accounts, which include individuals who pay directly, small employer groups (3-9 people), and persons covered by medical supplement contracts; (2) understating Empire’s losses *354 on "experience rated” and "incentive rated” accounts, which are "good risk” accounts consisting of larger-sized groups that are rated both on their own claims experience and the experience of pools of claimants; (3) misrepresenting the reasons for the depletion of Empire’s reserves and its poor financial condition; and (4) misrepresenting the reasons Empire needed a $100 million cash infusion which it ultimately obtained from New York State in 1993. The amended complaint asserts that defendants made such misrepresentations in order to obtain additional money from ratepayers such as plaintiffs, to conceal mismanagement and prior fraudulent activity by management, to maintain management’s wealth and to persuade New York State to provide the $100 million bailout. Plaintiffs further allege that defendants made the misrepresentations to NYSID in their various rate applications and to the media, and gave false testimony before both the NYSID and the State Legislature. They assert that, as a result, they have been paying inflated premiums and rates.
The amended complaint seeks recovery for violations of General Business Law § 349, common-law fraud and breach of contract.
Defendants seek dismissal on several grounds. First, they assert that the rates charged by Empire are set and approved by NYSID pursuant to a detailed process established by statute and regulations and enforced by NYSID. Thus, they argue that plaintiffs’ claims are barred by the regulatory scheme. They contend that the Superintendent makes the rate determinations and this court should not supplant its judgment for the judgment of the Superintendent. They assert that plaintiffs can only challenge the Superintendent’s determination in a CPLR article 78 proceeding as irrational, arbitrary or capricious, or in violation of law. Second, defendants urge that the "filed rate” doctrine bars plaintiffs’ claims. That doctrine, they argue, prohibits a party from recovering damages measured by comparing the rate filed with a regulatory agency and the rate that might have been approved absent the conduct in issue. They assert that plaintiffs can claim no rate as a legal right that is other than the filed rate. Third, defendants contend that the claims should be dismissed under the primary jurisdiction doctrine as the claims raise complex factual questions which are within the special competence of NYSID and this court should defer to the expertise of that agency. Finally, they claim the amended complaint fails to adequately allege the essential elements of the various claims.
*355 In opposition, plaintiffs argue that the action was properly commenced here because they are not alleging that NYSID did anything wrong and are not requesting that rates be changed. They claim that resort to the NYSID would be futile and there is no administrative expertise involved here. They contend that the "filed rate” doctrine does not apply here because this is not a Federal antitrust law claim, and the doctrine has been applied only in Federal courts and not in New York State courts. They also assert that it is inapplicable because they are not attacking the reasonableness of the rate increases or seeking to file new rates. Further, they urge that there is an exception to the doctrine where the claims involve a fraud committed on the agency. Plaintiffs assert that this court, and not NYSID, is best suited to determine whether defendants’ conduct was fraudulent, in breach of contract, or in violation of General Business Law § 349. They further argue that the primary jurisdiction doctrine is not applied where the agency has no jurisdiction over the relief sought and plaintiffs will not be provided with an adequate remedy. Finally, they urge that the complaint adequately alleges the causes of action.
In their submissions on these motions, plaintiffs requested that the court take judicial notice of Insurance Law § 4226 and asserted that they will be seeking leave to amend to add a claim under that statute. The parties have submitted memoranda in the form of letters arguing whether plaintiffs can state a claim under section 4226 and whether that claim would be barred by the "filed rate” doctrine.
Upon consideration of the various and voluminous submissions, the court holds that defendants’ motion to dismiss is granted only to the extent of dismissing the fraud, breach of contract, and General Business Law § 349 claims and that the amended complaint is deemed amended nunc pro tunc to add a claim under Insurance Law § 4226 against Empire which survives the dismissal motion. This holding is based on several findings and conclusions. First, defendants are correct that inasmuch as plaintiffs’ claims in the amended complaint are essentially challenging the rates set by NYSID as excessive, they are more appropriately pursued in a CPLR article 78 proceeding. (See, e.g., Matter of Medical Malpractice Ins. Assn. v Superintendent, 72 NY2d 753 [1988], cert denied 490 US 1080 [1989]; Matter of Procaccino v Stewart, 25 NY2d 301 [1969].) Insurance Law § 326 (a) and § 4315 (b) specifically provide for judicial review under CPLR article 78.
*356 Second, the "filed rate” doctrine also bars the claims alleged. In a recent decision, the Second Circuit in Wegoland Ltd. v NYNEX Corp. (27 F3d 17, affg 806 F Supp 1112 [SD NY 1992]) reviewed claims substantially similar to the claims raised here and held that the "filed rate” doctrine barred such claims. Like the instant case, Wegoland Ltd. (supra) involved class claims by ratepayers alleging that NYTel and NETel gave regulatory agencies and consumers misleading financial information to support the inflated rates they requested. (Wegoland Ltd. v NYNEX Corp., 806 F Supp, at 1113.) The plaintiffs alleged a scheme in which unregulated subsidiaries of NYNEX sold products and services to NYTel and NETel at inflated prices and those prices were then used to justify higher rates to consumers. The result was that the regulatory agencies "were misled into believing that certain higher rates were justifiable, and the NYNEX corporate family was able to enjoy inflated profits as a result of its misrepresentations.” (Supra, at 1113.)
The Second Circuit reviewed the history and the rationale of the "filed rate” doctrine and concluded that it barred the complaints. The "filed rate” doctrine bars suits against a regulated industry entity based on allegations that the rates charged by the regulated entity are unreasonable. "Simply stated, the doctrine holds that any 'filed rate’ — that is, one approved by the governing regulatory agency — is per se reasonable and unassailable in judicial proceedings brought by ratepayers.” (Wegoland Ltd. v NYNEX Corp., supra, at 18.)
The "filed rate” doctrine evolved from a line of United States Supreme Court cases. In Keogh v Chicago & Northwestern Ry. Co. (260 US 156 [1922]), a shipper sued a carrier alleging a conspiracy to set arbitrarily high rates in violation of Federal antitrust laws. The Court dismissed the complaint holding that the plaintiff could not recover damages for the alleged overcharges because the Interstate Commerce Commission (ICC) had approved the rates as reasonable. (Supra, at 162.) The Court reasoned that to grant relief would lead to discrimination in rates because a plaintiff who sued and won would end up paying less than other customers, and would require the Court to speculate about the rate that would have been set by the carriers and approved by the ICC absent the conspiracy. (Supra, at 163-165.)
The rule established in Keogh (supra) was reaffirmed by the Supreme Court in Square D Co. v Niagara Frontier Tariff Bur. (476 US 409 [1986]). In Square D Co., the plaintiffs alleged *357 that they were forced to pay excessive rates for interstate shipping because the defendants conspired to fix rates. Because the rates were filed with the ICC, the Court concluded that damages would have to be measured by the difference between the filed rates and what the rates would have been in a freely competitive market. Thus, the Court held that the "filed rate” doctrine barred the action.
The doctrine was applied in the context of electric utility rates in Montana-Dakota Utils. Co. v Northwestern Pub. Serv. Co. (341 US 246 [1951]). The plaintiff in Montana-Dakota Utils., a utility company, alleged that defendant, also a utility company, committed fraud in connection with the setting of rates that were then filed with the Federal Power Commission. The Court ruled that plaintiff had not established a cause of action because it could "claim no rate as a legal right that is other than the filed rate”. (Supra, at 251.) It emphasized that the question of what rate is reasonable is best left to the regulatory agency. (Supra, at 251-252.)
In Arkansas La. Gas Co. v Hall (453 US 571 [1981]) (Arkla), the Supreme Court emphasized that the considerations underlying the doctrine are " 'preservation of the agency’s primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant.’ ” (Supra, at 577-578.)
In Maislin Indus., U.S. v Primary Steel (497 US 116 [1990]), the Court strictly applied the "filed rate” doctrine, stressing the rationale that retroactive relief in the courts would lead to discrimination in rates.
Based on this history, the Second Circuit in Wegoland Ltd. (supra) rejected the identical arguments made by plaintiffs here. There, as in the instant case, the plaintiffs urged that there should be an exception to the "filed rate” doctrine when there are allegations of fraud upon the regulatory agency. The Second Circuit, as have other courts, rejected this notion. (Wegoland Ltd. v NYNEX, 27 F3d, at 20-21, supra; see also, Taffet v Southern Co., 967 F2d 1483 [11th Cir], cert denied — US —, 113 S Ct 657 [1992]; H.J. Inc. v Northwestern Bell Tel. Co., 954 F2d 485 [8th Cir], cert denied 504 US 957 [1992]; Sun City Taxpayers’ Assn. v Citizens Utils. Co., 847 F Supp 281 [D Conn 1994] [Cabranes, J.]; Lifschultz Fast Frgt. v Consolidated Freightways Corp., 805 F Supp 1277 [D SC 1992], affd without opn 998 F2d 1009 [4th Cir], cert denied — US —, *358 114 S Ct 553 [1993]; Cullum v Arkla, Inc., 797 F Supp 725 [ED Ark 1992], affd without opn 994 F2d 842 [8th Cir 1993]; Hilling v Northern States Power Co., No. 3-90 Civ 418 [D Minn 1990].) It rejected the adoption of a fraud exception as being "out of step with guiding Supreme Court caselaw, which has applied the filed rate doctrine in the face of allegations of fraud on the regulators, as well as contrary to the policies behind the doctrine.” (Wegoland Ltd. v NYNEX Corp., supra, at 20.)
Plaintiffs here have also contended that the doctrine does not apply because this case does not involve a Federal agency or any Federal claims. As the Second Circuit held in Wegoland Ltd. (supra), the rationales of the "filed rate” doctrine apply to regulation by State agencies and apply not only to Federal causes of action, but also to State claims. (Wegoland Ltd. v NYNEX Corp., supra, at 20; see also, Taffet v Southern Co., supra; H.J. Inc. v Northwestern Bell Tel. Co., supra; Sun City Taxpayers’ Assn. v Citizens Utils. Co., supra.)
Further, and contrary to plaintiffs’ contentions otherwise, in order to determine the damages plaintiffs seek, this court would be required to determine what would be a reasonable rate absent the fraudulent misrepresentations made to NYSID. As the Second Circuit recognized in Wegoland Ltd. (supra, at 21), this is precisely the judicial determination regarding the reasonableness of rates that the "filed rate” doctrine forbids. As the court below in Wegoland Ltd. stated, "[t]he fact that the remedy sought can be characterized as damages for fraud does not negate the fact that the court would be determining the reasonableness of rates.” (Wegoland Ltd. v NYNEX Corp., 806 F Supp, at 1119, supra.) The ascertaining of damages and the determination of a reasonable rate are "hopelessly intertwined.” (Wegoland Ltd. v NYNEX Corp., 27 F3d, at 21, supra.)
Plaintiffs’ argument that the class action nature of this lawsuit eliminates the potential of rate discrimination and, therefore, the "filed rate” doctrine should not apply was also rejected in Wegoland Ltd (supra, at 22; see also, Fersco v Empire Blue Cross/Blue Shield, 1994 WL 445730 [SD NY 1994, 93 Civ 4226]). As recognized in Wegoland Ltd., there are still concerns about agency authority and expertise and the policy that courts should not be allowed to become enmeshed in the rate-making process. (27 F3d, at 22, supra.)
Further, plaintiffs’ assertion that the lack of an available remedy if this court bars the action renders application of the *359 doctrine inappropriate is rejected. The unavailability of a remedy did not prevent the Supreme Court in Arkla (supra, 453 US, at 578) from applying the doctrine.
The doctrine applies to bar the claims pleaded in the amended complaint against the individual defendants Weiss-man and Cardone. (See, Wegoland Ltd. v NYNEX Corp., supra; H.J. Inc. v Northwestern Bell Tel. Co., supra; Cullum v Arkla, Inc., supra; Fersco v Empire Blue Cross/Blue Shield, supra; Feiner v Orange & Rockland Utils., 862 F Supp 1084, 1090 [SD NY 1994].)
Plaintiffs’ reliance on Gelb v American Tel. & Tel. Co. (813 F Supp 1022 [SD NY 1993]) is misplaced. First, Gelb was decided prior to the Second Circuit affirmance of Wegoland Ltd. (supra). Second, Gelb is distinguishable as the court there found that the plaintiff’s claim did not implicate in any manner the reasonableness of the filed rate. Rather, plaintiff’s claim in Gelb was grounded on allegations that AT&T induced customers to use its calling card in the belief that the use of the card was free. Thus, it was a claim for marketing fraud in advertising. In contrast, the instant case is more analogous to Wegoland Ltd., involving claims of fraudulent financial representations to the regulatory agency to obtain higher filed rates.
Plaintiffs’ reliance on Hunt v Suburban Propane Gas Corp. (191 AD2d 781 [3d Dept 1993]) to argue that the "filed rate” doctrine does not apply to intrastate regulation also is misplaced. The Court in Hunt only noted that the application of "the filed rate doctrine derived from [the Interstate Commerce Act]” depends on whether the transportation services in question were in interstate commerce. (Supra, at 782.) There was no general discussion of the doctrine. In any event, the doctrine may spring from sources other than the Interstate Commerce Act. (See, Purcell v New York Cent. R. R. Co., 268 NY 164, 171, appeal dismissed and cert denied 296 US 545 [1935]; Wegoland Ltd. v NYNEX Corp., supra, at 18, 20-21; see also, Fersco v Empire Blue Cross/Blue Shield, supra; Feiner v Orange & Rockland Utils., supra.)
The instant case presents the precise situation the "filed rate” doctrine was intended to avoid. The United States District Court for the Southern District of New York in Fersco v Empire Blue Cross/Blue Shield (supra) recognized this and dismissed a factually identical complaint against these same defendants for their alleged fraud on NYSID in seeking and *360 obtaining rate increases from 1990 through 1993. The court (Keenan, J.) held the "filed rate” doctrine barred the claims and that plaintiff must pursue them through " 'proper government officials’ who may challenge these rates 'in appropriate circumstances.’ ” (Supra, 1994 WL 445730, 3, quoting Wegoland Ltd. v NYNEX Corp., supra.)
The "filed rate” doctrine has been recognized in this State in the context of insurance. In Medical Malpractice Ins. Assn. v Brooklyn Hosp. (70 AD2d 552 [1st Dept 1979]), the First Department stated that "[plaintiff’s rate structure has been approved by the superintendent [of insurance] and is a matter of public record. As held in [Medical Malpractice Ins. Assn. v] Neuman [64 AD2d 559], appellant [ratepayer] cannot in this type of action challenge the rates and premiums approved by the Insurance Department”. (Supra, at 553.) The ratepayer’s remedy is to challenge the rates in an article 78 proceeding. (Supra; see also, Medical Malpractice Ins. Assn. v Methodist Hosp., 64 AD2d 558, 559 [1st Dept 1978]; American Motorists Ins. Co. v New York Seven-Up Bottling Co., 18 AD2d 36 [1st Dept 1963], affd 13 NY2d 1157 [1964]; Public Serv. Mut. Ins. Co. v Rosebon Realty Corp., 39 Misc 2d 663 [Civ Ct, NY County 1963].)
Based on the above, the court concludes that the claims pleaded for fraud and breach of contract and under General Business Law § 349 are barred by the "filed rate” doctrine.
However, this conclusion does not end the matter. Plaintiffs assert a claim under Insurance Law § 4226. While they have not formally moved for leave to amend, leave to amend to add this claim is granted nunc pro tunc. The merits of the claim in the context of defendants’ dismissal motion has been briefed by all parties, and the court finds the claim sufficient and not barred by the "filed rate” doctrine.
Insurance Law § 4226 provides in relevant part:
"(a) No insurer authorized to do in this state the business of life, or accident and health insurance, or to make annuity contracts shall:
"(4) make any misleading representation, or any misrepresentation of the financial condition of any such insurer or of the legal reserve system upon which it operates; or * * *
"(d) Any such insurer that knowingly violates any provision of this section, or knowingly receives any premium or other compensation in consequence of such violation shall, in addition to any other penalty provided in this chapter, be liable to *361 a penalty in the amount of such premium or compensation, which penalty may be sued for and recovered by any person aggrieved for his own use and benefit, in accordance with the provisions of the civil practice law and rules.”
It clearly provides a private right of action against an insurer for a penalty in the amount of premiums paid by any aggrieved person. (See, Slote v Equitable Life Assur. Socy., 78 Misc 2d 462 [Sup Ct, NY County 1974] [analyzing, inter alia, section 211 of the Insurance Law, the predecessor of section 4226].)
Defendants argue that section 4226 only addresses unfair competition between insurers that fraudulently induces policyholders to change policies and insurers. This construction is far too narrow. There is nothing in the legislative history to support it, and defendants rely on cases that focus on different subdivisions of section 4226. Thus, for example, Slote v Equitable Life Assur. Socy. (supra), relied on by defendants, stated that the predecessor of section 4226, section 211 of the Insurance Law, prohibits "the making of misrepresentations, misleading statements, and incomplete comparisons for the purpose of inducing any person to surrender, or forfeit or allow to lapse any insurance policy.” (Supra, at 463.) Defendants focus on the final clause "for the purpose of inducing” (supra), and argue that this court should interpret section 4226 as applying only in those circumstances. (See also, People v Legg, 234 App Div 372 [1st Dept], affd 259 NY 654 [1932].) That language, however, appears to be modifying only the words "incomplete comparisons.” (78 Misc 2d, at 463, supra.) Moreover, in section 4226 that same language only appears in subdivision (a) (5): "(5) Make or deliver to any person or persons any incomplete comparison of any such policies or contracts for the purpose of inducing, or tending to induce, such person or persons to lapse, forfeit or surrender any insurance policy or contract.” It does not modify all of the paragraphs of section 4226 (a) and plaintiffs are alleging a violation of section 4226 (a) (4).
Moreover, contrary to defendants’ contention, the recovery provision of section 4226 in subdivision (d) demonstrates that a cause of action under this statute does not run afoul of the "filed rate” doctrine. It specifically provides for a penalty in the amount of the premiums paid. There is no provision for or need to recalculate the filed rates. Thus, the potential damages awarded under section 4226 will not conflict with Insurance Law § 4308 which requires that rates be filed with *362 NYSID and approved by the Superintendent, or with Insurance Law § 4315 which requires that judicial review of the Superintendent’s decisions be conducted in accordance with CPLR article 78.
The claim under section 4226, however, is only maintainable against Empire, the insurer, and not against the individual defendants. Accordingly, the court holds that plaintiffs’ proposed claim under Insurance Law § 4226 states a cause of action against Empire and is not barred by the "filed rate” doctrine.
Plaintiffs’ class certification motion, however, is denied. The only claim to survive defendants’ dismissal motion is the claim under Insurance Law § 4226. CPLR 901 (b) specifically states: "Unless a statute creating or imposing a penalty, or a minimum measure or recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.” Section 4226 clearly states that it provides for recovery of a penalty and does not contain the necessary express clause allowing these damages to be recovered in a class action. (See, Carter v Frito-Lay, Inc., 74 AD2d 550 [1st Dept 1980], affd 52 NY2d 994 [1981]; Klapak v Pappas, 79 AD2d 602 [2d Dept 1980]; Compact Electra Corp. v Paul, 93 Misc 2d 807 [App Term, 2d Dept 1977].) Therefore, class certification is denied.