Lucille A. ROUSSIN, on behalf of herself and all others similarly situated, Plaintiffs,

v.

AARP, INC. et al., Defendants.

No. 09 Civ. 0586 (VM).

United States District Court, S.D. New York.

Oct. 15, 2009.

Harriet Tamen, Law Offices of Harriet Tamen, Judith Lynne Spanier, Orin Robert Kurtz, Abbey Spanier Rodd Abrams & Paradis, LLP, New York, NY, for Plaintiffs.

Michael D. Hays, Leslie Hugh Wiesenfelder, Dow Lohnes & Albertson, PLLC, Washington, DC, for Defendants.

## DECISION AND AMENDED ORDER

VICTOR MARRERO, District Judge.

Plaintiff Lucille A. Roussin ("Roussin") brought this class action on behalf of herself and all others similarly situated against defendants AARP, Inc. ("AARP"), AARP Insurance Plan (the "Trust"), and the current trustees of the Trust ("Trustees," and collectively with AARP and the Trust, "Defendants"), asserting claims of breach of fiduciary duty against all Defendants and gross negligence against Trustees, with regard to their approval of certain health insurance premium rates offered to AARP members. Roussin seeks, among other things, restitution and an accounting. Defendants filed a motion

under Federal Rule of civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss Roussin's complaint on multiple grounds, including that Roussin's claims are barred by the filed rate doctrine.

By Order dated September 29, 2009 (the "September 29 Order"), the Court granted Defendants' motion to dismiss the complaint. The Court now sets forth its findings, reasoning, and conclusions in support of the September 29 Order.

## I. BACKGROUND [1]

### A. THE TRUST

AARP, formerly known as the American Association of Retired Persons, is a 501(c) non-profit corporation with a membership of more than 38 million Americans over the age of 50. In September 1958, AARP created a Trust to make group health insurance available to its members.

### B. THE 1997 AGREEMENT

In 1997, AARP, the Trust, and United Health Group ("UHG") entered into a ten-year agreement (the "1997 Agreement"), under which UHG would offer certain types of health insurance programs to AARP members. UHG received premiums ("Member Contributions") from AARP members ("Member–Insureds") who chose to participate in the health insurance programs. Pursuant to the 1997 Agreement, Member Contributions were adjusted annually after having been reviewed and approved by the Trust and Trustees. The calculation of each year's Member Contribution rates was based on six components, one of which was an allowance to AARP for its sponsorship of the insurance program and for use of AARP

---

1. The facts below are taken from the Complaint, dated January 21, 2009 ("Complaint"), and the documents attached to it or incorporated by reference. *See Global Network* *Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156–57 (2d Cir.2006). Except where specifically referenced, no further citation to these sources will be made.

trademarks and services (the "AARP Allowance"). The AARP Allowance was paid from Member Contributions, and AARP reported the AARP Allowance in its financial statements as royalties.

The AARP Allowance was computed as a percentage of the aggregate payments made by Member–Insureds as Member Contributions. Therefore, according to the Complaint, Member–Insureds are effectively double-charged—the AARP Allowance is a percentage of Member Contributions, which already include the AARP Allowance. The Complaint alleges that this mechanism drove Member Contributions upward, and that while such an increase and method of calculation was beneficial to AARP, it operated to the financial detriment of Member–Insureds.

Roussin became a member of AARP in 2006, and she became a Member–Insured of a UHG health insurance plan sponsored by AARP in 2008.[2] Roussin now alleges that Defendants, by maximizing the benefit to AARP at the expense of Member–Insureds, failed to fulfill their fiduciary duties "to keep insurance premiums reasonable and economic and tied to the cost of the health insurance provided," and that the Trustees acted with gross negligence in their management of the Trust. (Complaint ¶¶ 50–52.)

Defendants move to dismiss the Complaint on multiple grounds, including that the filed rate doctrine precludes Roussin's claims because the UHG rate she challenges has been approved by the governing regulatory agency. Roussin responds that the filed rate doctrine does not apply to this action because she is not challenging UHG's filed rate, but rather Defendants' breach of their fiduciary duties and Trustees' gross negligence in their approval of the AARP Allowance.

## II. DISCUSSION

### A. LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. See Ashcroft v. Iqbal, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Secs. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. See Iqbal, 129 S.Ct. at 1950 ("When

---

**2.** Roussin obtained her insurance coverage in 2008, after the ten-year 1997 Agreement was succeeded by a 2007 insurance agreement (the "2007 Agreement"). Although the parties dispute the significance of the timing of Roussin's coverage, the Court will assume for the purposes of this motion that the 2007 Agreement extended the terms of the 1997 Agreement. Whether Roussin's claims are brought under the 1997 Agreement or the 2007 Agreement, however, has no bearing on the outcome of Defendants' motion; under either agreement, the filed rate doctrine precludes Roussin's claims.

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950.

As stated above, when deciding a motion to dismiss, the Court may consider any documents attached to the complaint or incorporated by reference. *See Global Network Commc'ns*, 458 F.3d at 156–57. The Court may also take judicial notice of filings with government agencies that are a matter of public record. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6). . . ."); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir.1991) (documents publicly filed with the SEC may be considered on a motion to dismiss).

## B. *THE FILED RATE DOCTRINE*

■ "The filed rate doctrine bars suits against regulated utilities grounded on the allegation that the rates charged by the utility are unreasonable." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994). The filed rate doctrine "holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Id.* In *Wegoland*, the Second Circuit approvingly quoted the district court's conclusion that "two companion principles lie at the core of the filed rate doctrine: first, that legislative bodies design agencies for the specific purpose of setting uniform rates, and second, that courts are not institutionally well suited to engage in retroactive

rate-setting." *Id.* at 19 (*quoting Wegoland Ltd. v. NYNEX Corp.*, 806 F.Supp. 1112, 1115 (S.D.N.Y.1992)). The Circuit Court later expanded upon these principles:

> The filed rate doctrine is motivated by two "companion principles"—(1) preventing carriers from engaging in price discrimination as between ratepayers (the "nondiscrimination strand") and (2) preserving the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform.

*Marcus v. AT & T Corp.*, 138 F.3d 46, 58 (2d Cir.1998) (*quoting Wegoland*, 27 F.3d at 19). Further, "the doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Id.* at 59. Although the filed rate doctrine often arises in the context of rates approved by federal agencies, "the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies." *Wegoland*, 27 F.3d at 20.

Defendants assert that the filed rate doctrine bars Roussin's claims because she is, at base, challenging the reasonableness of the cost of her AARP-sponsored health insurance rates, and the New York State Department of Insurance ("NYSDI") has approved those rates. The Court agrees.

■ As a threshold matter, the Court notes that the NYSDI regulates and has approved the UHG insurance rates about which Roussin complains. Under New York law, "the Superintendent of Insurance has a statutory duty to assure that health insurance benefits are reasonable in

relation to the premiums charged." 11 N.Y. Comp.Codes R. & Regs. § 52.1(f). The insurer must file a schedule of premiums with the Superintendent and must obtain the Superintendent's approval of those premiums before they may be used. N.Y. Ins. Law § 3231(d). "The [S]uperintendent may refuse such approval if he or she finds that such premiums are excessive, inadequate, or unfairly discriminatory." *Id.* The Court takes judicial notice that the Superintendent has approved the precise rates that Roussin challenges here. (*See, e.g.,* Declaration of Daniel D. Prichard, dated March 17, 2009, Exs. 4–7.) Roussin does not dispute that the NYSDI has approved the relevant UHG insurance rates.

New York courts have routinely applied the filed rate doctrine to bar plaintiffs' claims seeking the recovery of insurance premiums that have been approved by the NYSDI. *See, e.g., Fersco v. Empire Blue Cross/Blue Shield of N.Y.,* No. 93 Civ. 4226, 1994 WL 445730, at *3 (S.D.N.Y. Aug. 17, 1994); *City of New York v. Aetna Cas. & Sur. Co.,* 264 A.D.2d 304, 693 N.Y.S.2d 139, 140 (1st Dep't 1999); *Byan v. Prudential Ins. Co. of Am.,* 242 A.D.2d 456, 662 N.Y.S.2d 44, 45 (1st Dep't 1997); *In re Empire Blue Cross & Blue Shield Customer Litig.,* 164 Misc.2d 350, 622 N.Y.S.2d 843, 849 (N.Y.Sup.Ct.1994) ("The 'filed rate' doctrine has been recognized in this state in the context of insurance."), *aff'd sub nom. Minihane v. Weissman,* 226 A.D.2d 152, 640 N.Y.S.2d 102, 103 (1st Dep't 1996) ("The filed rate doctrine prevents challenges to rates established by regulatory agencies, here the New York State Insurance Department. . . .").

■ Roussin's allegations are all premised upon an underlying challenge to her UHG insurance rates, or more specifically, the AARP Allowance portion of the rates and its method of calculation. (*See, e.g.,* Complaint ¶ 1 (alleging that Defendants wrongly permitted increases in "the cost of premiums for AARP-sponsored health insurance in a manner unrelated to the cost of the insured health services"); *id.* ¶ 41 (alleging that AARP's budgetary needs "dictated the AARP Target Allowance and, ultimately, the premiums paid by AARP Member–Insureds for insurance coverage"); *id.* ¶ 49 ("The pricing of the Member Contributions and the AARP Allowance operated to increase the value royalty payments to AARP at the expense of plaintiff and the Class."); *id.* ¶ 54 (alleging that Trustees' approval of the AARP Allowance and Member Contributions wrongly permitted "AARP to profit handsomely from its sponsorship of the UHG insurance to the detriment of Member–Insureds.").)

Although the claims are styled as claims of breach of fiduciary duties and gross negligence, Roussin essentially seeks relief for an injury allegedly caused by her payment of her AARP health care premiums, which include the AARP Allowance. The health insurance rate at issue here is on file with the NYSDI, a regulatory commission. As the Second Department has stated,

> It has repeatedly been held that a consumer's claim, however disguised, seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission, is viewed as an attack upon the rate approved by the regulatory commission. All such claims are barred by the "filed rate doctrine."

*Porr v. NYNEX Corp.,* 230 A.D.2d 564, 660 N.Y.S.2d 440, 442 (2d Dep't 1997).[3] The

---

**3.** Courts have applied this principle to claims of breach of fiduciary duty and gross negligence. *See, e.g., Hooks v. American Med. Sec. Life Ins. Co.,* No. 3:06cv71, 2008 WL 3911130, at *6 (W.D.N.C. Aug. 19, 2008) (dismissing claim of breach of fiduciary duty based on the filed rate doctrine and citing *Wegoland* ); *Duggal v. G.E. Capital Commc'ns*

Court is persuaded that Roussin complains of and seeks recovery for the difference in her insurance rate between what she believes she unreasonably paid and what she believes she should have paid (pending an accounting).

In addition, the relief that Roussin seeks consists of an accounting, after which she will seek "restitution from defendants to herself and the Class of all monies improperly paid over to AARP." (Complaint ¶ 64.) Her claims are therefore barred by the filed rate doctrine. *See Marcus v. AT & T Corp.*, 938 F.Supp. 1158, 1170 (S.D.N.Y. 1996) ("Any remedy that requires a refund of a portion of the filed rate ... is barred."), *aff'd,* 138 F.3d 46 (2d Cir.1998).

Roussin's arguments seeking to avoid the application of the filed rate doctrine fall into three camps: (1) neither of the principles underlying the filed rate doctrine are implicated here; (2) she is not challenging UHG's filed rate, but rather the AARP Allowance, which is an un-filed rate; and (3) Defendants are unregulated parties that did not file the rates at issue.[4] The Court finds that each argument is without merit.

### 1. Principles Underlying the Filed Rate Doctrine

First, as explained above, there are two principles underlying the filed rate doctrine: the nondiscrimination strand and the nonjusticiability strand. *See Marcus,* 138 F.3d at 58. The Court need not determine the applicability of the nondiscrimination strand, as the nonjusticiability strand—that courts should not involve themselves in the rate-making process or determinations of the reasonableness of such filed rates—is squarely implicated by the Complaint. Roussin alleges that the UHG health insurance rates at issue are unreasonable and essentially seeks a refund of the portion of her paid rates that are found to be unreasonable. Such a determination would enmesh the Court in the rate-making process that the NYSDI is more competent to perform. *See Wegoland,* 27 F.3d at 19 (an underlying principle of the filed rate doctrine is that "courts are not institutionally well suited to engage in retroactive rate-setting").

### 2. The Complaint Challenges a Filed Rate

Second, Roussin argues that she "challenges only the Target Allowance and the AARP Allowance, and not UHG's insurance premium." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed April 17, 2009 ("Roussin Opp."), at 11.) In other words, Roussin argues that she is not challenging UHG's premium as a whole, just the allowances that make up a portion of the premium.

Although the Complaint focuses its attention on the impropriety of the AARP Allowance and its method of calculation, such a dispute necessarily challenges the UHG rate. As a result, Roussin is challenging UHG's insurance premiums, albeit one particular element of the premiums, and thus her claims are barred by the filed rate doctrine. *See Porr,* 660 N.Y.S.2d at

---

*Servs., Inc.,* 81 Cal.App.4th 81, 96 Cal.Rptr.2d 383, 390–93 (2d Dist.2000) (affirming dismissal of negligence claims based on the filed rate doctrine).

**4.** Roussin does not challenge Defendants' argument that New York law applies to the determination of whether Roussin's claims are barred by the filed rate doctrine. (*See*

Defendants' Memorandum of Law in Support of Motion to Dismiss at 8 n. 9.) Further, Roussin is a New York resident (*see* Complaint ¶ 5), and the rates charged to her must be filed with the NYSDI and approved by the Superintendent of Insurance. *See* N.Y. Ins. Law § 3231(d). The Court will therefore assume that New York law applies to the Court's analysis of the filed rate doctrine.

442 (filed rate doctrine bars claims based on an injury "allegedly caused by the payment of a rate on file with a regulatory commission"). Indeed, the only payment Roussin made was of the rate filed with the NYSDI, and her only alleged injury is that the rates she paid contributed to unwarranted profits for AARP. Roussin cannot avoid the application of the filed rate doctrine by purporting to challenge a portion of the rate at issue rather than the entire rate; to condone such an approach would gut the filed rate doctrine, as any future complainant would allege injuries stemming from only particular portions of a filed rate, rather than the entire rate.

Roussin cites to *Walton v. New York State Department of Correctional Services*, 57 A.D.3d 1180, 869 N.Y.S.2d 661 (3d Dep't 2008) for the proposition that "the filed rate doctrine does not apply where the plaintiff challenges an 'un-filed' rate." (Roussin Opp. at 12.) In *Walton*, inmates who wished to make telephone calls were required to place collect calls from a telephone system maintained by MCI Worldcom Communications, Inc. ("MCI") pursuant to an exclusive contract with the Department of Correctional Services ("DOCS"). Under that contract, DOCS and MCI agreed to a particular rate, and MCI agreed to remit 57.5% of its revenue to DOCS, which in turn placed that commission into an account used for medical care and other inmate benefits. The New York State Public Service Commission ("PSC") concluded that it lacked jurisdiction to review the portion of the

charged rate that corresponded to the 57.5% DOCS commission, and otherwise approved the remaining rates retained by MCI. *Walton,* 869 N.Y.S.2d at 663–64.

The Third Department recognized that "petitioners do not challenge the reasonableness of the rate approved by the PSC—i.e., the 42.5% portion of the charged rate that was retained by MCI. Rather, they challenge the portion of the charged rate that corresponded to the 57.5% commission retained by DOCS." *Id.* at 664. The Court thus concluded that the filed rate doctrine did not bar the plaintiff's claims because "PSC expressly determined that it lacked jurisdiction to review the challenged portion of the rate and, thus, declined to consider whether that portion of the rate was just and reasonable." *Id.*

In this case, however, Roussin does not argue that NYSDI has declined to review the challenged portion of the rate at issue. Indeed, NYSDI *has* approved the filed rate, including the challenged portion, in its entirety. In *Walton,* the Third Department distinguished that case from one in which the PSC had approved of the filed rate, including the DOCS's commission, in its entirety. *See id.* (contrasting case with *Bullard v. State of New York,* 307 A.D.2d 676, 763 N.Y.S.2d 371 (3d Dep't 2003) and interpreting *Bullard* as "concluding that the filed rate doctrine barred similar claims arising out of DOCS's 1996 contract with MCI after the PSC approved the filed rate, including DOCS's commission, *in its entirety.*" (emphasis in original)).[5]

---

**5.** The other cases to which Roussin cites do not fare any better. In *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,* 253 F.Supp.2d 262 (D.Conn.2003), the filed rate doctrine did not apply because the plaintiffs were not challenging the minimum milk price rates that had been filed with and approved by the USDA; rather, the plaintiffs were challenging the defendants' subsequent alleged manipulation of wholesale milk price rates. In *Alas-*

*ka Cargo Transport Inc. v. Alaska Railroad Corp.,* 834 F.Supp. 1216 (D.Alaska 1991), the court found that the plaintiff was not challenging the reasonableness of a filed rate, but rather that a contract promising better rates that the plaintiff received was breached. Here, Roussin is challenging the reasonableness of the rate, claiming that it wrongly imposes costs on Member–Insureds for AARP's benefit.

As the Second Circuit recognized in *Wegoland,* any attempt by the Court "to determine what part of the rate previously deemed reasonable" was based on the AARP Allowance and its method of calculation "would require determining what rate would have been deemed reasonable" absent such alleged improprieties and "then finding the difference between the two." 27 F.3d at 21.

### 3. *Defendants Are Not Required to Have Filed the Rates*

■ Roussin's final argument is that Defendants are unregulated parties that did not file the rates at issue. According to Roussin, because AARP is not an insurer, Defendants are not "participant[s] in the regulated industry and [are] not be [sic] required by the insurance laws to file the AARP Allowance or the Target AARP Allowance." (Roussin Opp. at 11.) Roussin offers no authority, however, for the proposition that the filed rate doctrine cannot bar claims against entities not directly regulated by the rate-making authority. For example, Roussin cites to *Beller v. William Penn Life Insurance Co. of New York,* 8 A.D.3d 310, 778 N.Y.S.2d 82, 84–85 (2d Dep't 2004) for the proposition that "the rate must be filed by a participant in a regulated industry." (Roussin Opp. at 11.) That case, however, held that "[t]he filed rate doctrine bars actions that challenge as unreasonable or unlawful the rates charge[d] by a regulated industry." *Beller,* 778 N.Y.S.2d at 84–85. The case makes no mention of whether the defendant must be the one who filed the rate; it only recognizes that the rate at issue must be filed by a participant in the regulated industry. Here, there is no dispute that the rates charged by UHG, a participant in

a regulated industry, were approved by the NYSDI.[6]

Further, courts have applied the filed rate doctrine to claims brought against parties that did not file the rate at issue. *See, e.g., Hooks,* 2008 WL 3911130, at *6 (applying filed rate doctrine to claims brought against a non-profit association that was the holder of a group health insurance policy that made insurance available to members, but was not the insurer and did not file the rates at issue). Here, although Defendants did not file the rates, Roussin indisputably seeks to challenge the reasonableness of the rates. Because she is "seeking relief for an injury allegedly caused by the payment of a rate on file with a regulatory commission," albeit indirectly, her claims are barred by the filed rate doctrine. *Porr,* 660 N.Y.S.2d at 442.

### III. *LEAVE TO REPLEAD*

The Court finds that any repleading would be futile and thus denies Roussin leave to replead. Although a court "should freely give leave" to amend "when justice so requires," Fed.R.Civ.P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007) (citations omitted). Repleading would be futile if the proposed amended complaint were to make the same allegations and seek the same relief as the Complaint here. As discussed above, Roussin cannot plead damages resulting from insurance premiums that, pursuant to the filed rate doctrine, are barred from

---

**6.** While Roussin cites to examples of cases where the filed rate doctrine was applied and the defendants were participants in regulated industries (*see* Roussin Opp. at 13), none of those cases stand for the proposition that the defendant *must* be a member of the regulated industry.

review by this Court. Leave to replead is thus denied.

The Court notes that Roussin is not without recourse upon dismissal of this action. She may, for example, seek to challenge the rates at issue in a more appropriate forum. *See, e.g., Aetna Cas.,* 693 N.Y.S.2d at 140 ("Plaintiff's remedy, if any, lies in the administrative proceedings of the Department of Insurance or in CPLR article 78 review of the Superintendent's action or refusal to act.").

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Order dated September 29, 2009 is amended to incorporate the discussion and decision set forth above; and it is further

**ORDERED** that the motion (Docket No. 4) of defendants AARP, Inc., AARP Insurance Plan, Robert G. Romasco, Charles E. Reed, Joanne Handy, A. James "Jim" Forbes, Jr., Cora L. Christian, Richard Johnson, T. "Byron" Thames, and William Hall to dismiss the complaint is GRANTED, and the class action complaint is dismissed with prejudice.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**